```
                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF OHIO
                         WESTERN DIVISION
```

MSI Regency Ltd.,                    :    Case No. 1:07-cv-900
                                     :
    Plaintiff,                  :
                                     :
vs.                                  :
                                     :
Alvin D. Jackson, M.D., et al.,      :
                                     :
    Defendants.                 :


**ORDER**


Before the Court are several pending motions. The first is Defendant's motion for leave to file an amended answer, to assert the affirmative defense of qualified immunity. (Doc. 9) Plaintiff opposes the motion, arguing defendants have waived this defense by not timely asserting it, citing Fed. R. Civ. P. 12(h). (Doc. 13)

Rule 12(h) requires that four specific defenses (personal jurisdiction, improper venue, insufficient process, or insufficient service of process) be asserted in a pre-answer Rule 12 motion, if those defenses are available at the time the motion is filed. These defenses may be waived if not asserted in a Rule 12 motion or in a responsive pleading. Qualified immunity is not one of the enumerated Rule 12(h) defenses.

Rule 12(g)(2) states that if a party makes a Rule 12 motion, it must assert its available affirmative defenses in that motion, and may not assert them in a subsequent Rule 12 motion, except as provided in Rule 12(h). Defendants did not file a Rule 12 motion to dismiss before they filed their motion for leave to amend their answer.

In English v. Dyke, 23 F.3d 1086 (6th Cir. 1994), the Sixth Circuit reversed a district court's order that defendants, various prison officials, waived qualified immunity by failing to assert it in their initial motion to dismiss. After the district court denied that motion, defendants raised qualified immunity in their answer. They then filed a second Rule 12 motion based on immunity. The district court found the defendants had waived immunity by failing to argue it in their first motion. The Sixth Circuit reversed, holding that qualified immunity may be raised at any stage of the case.

While an immunity defense, as with other affirmative defenses, may be waived by a party's undue delay, the Court finds that no undue delay or dilatory conduct occurred here. Plaintiff filed its complaint and motion for injunctive relief on December 18, 2007. The same day Plaintiff withdrew its motion for a temporary restraining order, and Defendants filed their answer on January 18, 2008. Since then, this case has essentially been dormant, and Plaintiff pursued an administrative appeal in the

Ohio courts. Plaintiff does not identify any actual prejudice that would result from Defendants' assertion of qualified immunity at this juncture of the case.

Defendants' motion for leave to file an amended answer is therefore granted. Plaintiff's motion to strike (Doc. 14) is denied for the same reasons.

<u>Defendants' Motion to Dismiss</u>.

After filing the motion to amend their answer, Defendants filed a motion to dismiss the complaint (Doc. 11), which Plaintiff opposes. (Doc. 12) Defendants argue that Plaintiff's constitutional claims are not ripe or fatally flawed, and that Defendants are immune from suit.

The following facts appear to be largely undisputed based upon the pleadings to date. Plaintiff purchased a nursing home/assisted living facility from a bankruptcy estate. Plaintiff applied for a "certificate of need" to rebuild the outdated facilities, which was granted by the Ohio Department of Health. Plaintiff's plan was to tear down another building (used for assisted living facilities) on the site and build a new nursing home facility, then move the existing residents into the new building. After this was accomplished, Plaintiff intended to demolish the old nursing home and build a new assisted living facility; assisted living changes or alterations do not require a certificate of need.

A "certificate of need" is an approval from the state to conduct a "reviewable activity." Ohio Rev. Code §3702.51(S) defines "reviewable activity" to include:

> (1) The establishment, development, or construction of a new long-term care facility;
>
> (2) The replacement of an existing long-term care facility;
>
> (3) The renovation of a long-term care facility that involves a capital expenditure of two million dollars or more, not including expenditures for equipment, staffing, or operational costs;
>
> (4) Any of the following changes in long-term care bed capacity:
>
> (a) An increase in bed capacity;
>
> (b) A relocation of beds from one physical facility or site to another, excluding the relocation of beds within a long-term care facility or among buildings of a long-term care facility at the same site;
>
> (c) A recategorization of hospital beds registered under section 3701.07 of the Revised Code from another registration category to skilled nursing beds or long-term care beds.
>
> (5) Any change in the health services, bed capacity, or site, or any other failure to conduct the reviewable activity in substantial accordance with the approved application for which a certificate of need concerning long-term care beds was granted, if the change is made within five years after the implementation of the reviewable activity for which the certificate was granted; ...

Plaintiff's CON application included a description of its plan for care of the current nursing home residents; Plaintiff stated the residents "will remain where they are until the renovation is completed."

-4-

Before receiving the certificate of need, Plaintiff had applied to HUD for construction financing for its planned two-phase project. Shortly after the certificate of need was formally approved on November 1, 2005, Plaintiff learned that HUD would not consent to its plan for two-phase construction financing, but would consider financing the project if the nursing and assisted living facilities were built as one project. Plaintiff changed its plans accordingly. On December 15, 2005, Plaintiff began notifying its nursing home residents that they would have to relocate during the construction, and offered assistance with relocation. The same day, Plaintiff notified ODH by letter of its intent to close the existing nursing home within 90 days.

ODH's representative, defendant Kenney, wrote Plaintiff on January 6, noting that the CON approval was conditioned on Plaintiff's representation that current residents would stay in their homes until construction was completed. Kenney warned Plaintiff that "Failure to comply with this aspect of the approved project may initiate procedures to withdraw the certificate of need." (Compl. Exhibit D)

Plaintiff responded by letter dated January 10, initially disputing Kenney's assertion that the CON contained a condition that the residents would not be relocated. (Compl. Exhibit E) After explaining Plaintiff's financing problem, however,

Plaintiff admitted that "This turn of events necessitated making a minor change in the original documented 'feasible plan for the care of the current residents' that was proposed in our application." Plaintiff states that approximately ten of its current residents were unhappy about the change of plans requiring them to move, which prompted Plaintiff to serve these residents with a 30-day notice of discharge from Plaintiff's facility. Compl. Exhibit C is an example of those notices, which are titled "Eviction Notice - Thirty Day Notice of Proposed Discharge From The Facility." And on January 25, Plaintiff informed ODH that the nursing facility was officially closed, and the last resident transferred to another facility on January 24. (Compl. Exhibit F)

Plaintiff alleges, and Defendants deny, that Plaintiff discussed Kenney's January 6 letter with another ODH representative, and with the ODH Assistant Counsel (Defendant Ray), and that they gave Plaintiff advice on the contents of its January 10 response.

Kenney sent Plaintiff a February 2 letter which did not refer to the January 10 letter or the relocation of the residents, and simply requested copies of design drawings. However, on February 23, Defendant Baird, the former ODH Director, responded to Plaintiff's January 10 letter, which ODH treated as a request for a "reviewability ruling" on Plaintiff's

change to the CON conditions. (Compl. Exhibit H) ODH concluded that Plaintiff's decision to relocate the current residents was a "substantial" change from the conditions upon which the CON was issued. In subsequent correspondence on March 6, ODH levied a statutory penalty and notified Plaintiff of its intent to withdraw the CON. After further consideration, ODH formally withdrew the CON on May 15, 2006.

Plaintiff appealed all of the ODH's rulings pursuant to the procedures set forth in Ohio Rev. Code §3702.60. The Ohio Court of Appeals has affirmed the Director's decisions, but lowered the assessed penalty from $207,000 to $3,000, based on statutory language governing such penalties. See <u>In re MSI Regency Village, Ltd.</u>, 2008 Ohio 3830 (10th Dist. App., July 31, 2008). Plaintiff's request for review by the Ohio Supreme Court of that decision is apparently pending.

Plaintiff filed its verified complaint in this case on October 26, 2007, alleging the Defendants, all individual ODH employees, knowingly and recklessly abused their positions and conspired with each other to deprive Plaintiff of its planned project. Count I, brought under 42 U.S.C. §1983, alleges that all Defendants (except Jackson, the current ODH Director, and Hoffman, who have both been dismissed) are personally liable for violating Plaintiff's due process, equal protection, and just compensation constitutional rights. Count II alleges that the

withdrawal of the CON was premature, because Plaintiff had appealed ODH's determination that changing the resident care plan was a "reviewable activity." The revocation of the CON before that appeal was, according to Plaintiff, an "administrative taking" of Plaintiff's property. Count III seeks a preliminary injunction against the CON withdrawal, which Plaintiff has not pursued. No official capacity claims are alleged, and the Ohio Department of Health is not a defendant.

Defendants move to dismiss the complaint, arguing this Court lacks subject matter jurisdiction, and that the complaint fails to state a claim.

**DISCUSSION**

1. <u>Standard of Review</u>.

A motion to dismiss for failure to state a claim operates to test the sufficiency of the complaint. The court must construe the complaint in the light most favorable to Plaintiff, and accept as true all well-pleaded factual allegations. See <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974), and <u>Roth Steel Products v. Sharon Steel Corp.</u>, 705 F.2d 134, 155 (6th Cir. 1983). The court need not accept as true legal conclusions or unwarranted factual inferences. <u>Lewis v. ACB Business Servs., Inc.</u>, 135 F.3d 389, 405 (6th Cir. 1998). The same general test applies to a challenge to subject matter jurisdiction, and Plaintiff bears the burden of establishing the propriety of jurisdiction.

Bell Atlantic v. Twombly, 550 U.S. 544 (2007) signaled a significant change in the standard of review for Rule 12 motions. The Sixth Circuit recently stated that, after Twombly, a claim will survive a motion to dismiss if its "[f]actual allegations [are] enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true. ... [W]hen a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder. ... [W]e construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." Jones v. City of Cincinnati, 521 F.3d 555, 559 (6th Cir. 2008) (internal citations omitted).

2. Ripeness, Exhaustion, and Finality.

Defendants initially suggest that Plaintiff's remedy lies in the Ohio Court of Claims, not in a constitutional action in this Court. The Court rejects this assertion. This is not a suit against the state nor against any individual state actors in their official capacities. Plaintiff correctly notes that Ohio Rev. Code §2743.02(A)(1) provides that filing an action in the Court of Claims results in a complete waiver of any claims Plaintiff may have against state officers or employees.

Defendants primarily assert that Plaintiff's "takings" claim is not ripe because Plaintiff has not exhausted state remedies, and therefore this Court lacks subject matter jurisdiction. Defendants cite <u>Williamson County Reg'l Planning Comm v. Hamilton Bank</u>, 473 U.S. 172, 195 (1985): "If a state provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the [5th Amendment's] Just Compensation Clause until it has used the procedure and been denied just compensation."

To the extent that Plaintiff is asserting a constitutional takings claim based on the regulatory or administrative appropriation of its property, Defendants are correct that exhaustion of available state remedies is required. Plaintiff has not alleged that it has pursued Ohio's recognized remedy for involuntary takings, a mandamus action to compel the government to initiate appropriate proceedings. See <u>State ex rel. Levin v. Sheffield Lake</u>, 70 Ohio St.3d 104, 108-109, 637 N.E.2d 319 (Ohio 1994). Nor does Plaintiff allege that available state remedies are inadequate. Plaintiff's "takings" claim as stated in Count II of its complaint, and referenced in Count I, is therefore fatally defective, and this Court lacks subject matter jurisdiction. This claim is therefore dismissed without prejudice.

As for the balance of Plaintiff's complaint, the Court views

the remaining constitutional claims as premised on allegations of arbitrary and capricious conduct by the Defendants, suggesting a substantive due process claim. Exhaustion of state remedies is not required in order to pursue a due process claim under Section 1983. See, e.g., Bowers v. City of Flint, 325 F.3d 758, 762 (6th Cir. 2003).

3.  Due Process.

To state a due process claim under 42 U.S.C. §1983, Plaintiff must show that Defendants acted under color of state law to deprive Plaintiff of a definite, constitutionally-protected property interest. "Property interests are created and defined by an independent source such as state law. ... A cognizable property interest arises when plaintiffs have a legitimate claim of entitlement (or more than a unilateral expectation) to a particular benefit." Paytel v. City of Detroit, 287 F.3d 527, 539 (6th Cir. 2002) (internal quotations and citations omitted).

It is undisputed that Plaintiff was issued a CON for its project. At least for Rule 12 purposes, a state-issued certificate of need appears to be similar to a license or permit that, once granted by the state, constitutes a protected property interest. See, e.g., Chandler v. Village of Chagrin Falls, 2008 Fed. App. 0606N, 2008 U.S. App. LEXIS 21477 (6th Cir., October 8, 2008) (unpublished), holding that an issued building permit gives rise to a constitutionally protected interest; Brookpark

Entertainment, Inc. v. Taft, 951 F.2d 710, 716 (6th Cir. 1991) [liquor license is a protected property interest]. Similar principles apply to public contracts, as a property interest may be recognized if a plaintiff can show (1) it was awarded the contract and then deprived of it, or (2) that state law granted the governmental entity limited discretion in awarding the contract, which the entity abused. United of Omaha Life Ins. Co. v. Solomon, 960 F.2d 31, 34 (6th Cir. 1992). As Plaintiff has sufficiently alleged a cognizable property interest, the question is whether Plaintiff was unconstitutionally deprived of that interest.

Plaintiff does not specifically state whether its due process claim is procedural or substantive. The fundamental elements of procedural due process are notice and an opportunity to be heard. See, e.g., Yellow Freight Systems, Inc. v. Martin, 954 F.2d 353, 357 (6th Cir. 1992). Plaintiff's pleadings establish that Plaintiff received both notice and an opportunity to contest ODH's actions, during which Plaintiff has been represented by counsel. Plaintiff does not allege that the challenged ODH actions were "random and unauthorized" and that available state remedies would not adequately compensate for the resulting loss, a permissible alternate basis for a procedural due process claim. See Macene v. MJW, Inc., 951 F.2d 700, 706 (6th Cir. 1991). The Court concludes that Plaintiff has not

adequately alleged a procedural due process claim in its complaint.

However, Plaintiff's allegations may fairly be viewed as alleging a substantive due process violation. As explained by the Sixth Circuit, "... citizens have a substantive due process right not to be subjected to arbitrary or irrational [governmental] decisions." Pearson v. City of Grand Blanc, 961 F.2d 1211, 1217 (6th Cir. 1992) (addressing zoning regulations). A substantive due process claim requires Plaintiff to allege (1) a constitutionally protected property interest that (2) was deprived by arbitrary and capricious state action. Such action must be akin to the traditional "shocks the conscience" standard. See Bowers v. City of Flint, 325 F.3d at 763.

The Court has determined that Plaintiff has sufficiently alleged a protected property interest. Plaintiff's complaint alleges that Defendant Kenney, Chief of ODH's CON Section, ignored Plaintiff's responses to her January 6, 2006 letter; provided "false factual information" to other ODH staff; purposely misapplied and misinterpreted the CON rules; refused to give Plaintiff the opportunity to stop the planned closing of its old facility; and misled Plaintiff to believe that its January 11 letter was acceptable to ODH, upon which Plaintiff relied in closing the old facility. (Compl. ¶74(a)) Other Defendants (Kaiser and Ray) allegedly conspired with Kenney, and Ray

-13-

allegedly told Plaintiff that Kenney's January 6 letter was "unprecedented." Compl. ¶47. Still other Defendants (King, Govern, Maust, Dile, and Baird) allegedly failed to investigate and/or failed to adequately supervise ODH staff; Baird is accused of failing to "personally assure" himself that his staff recommendations were correct and lawful. Compl. ¶74(i). All Defendants allegedly conspired with each other to harm Plaintiff by depriving him of the CON needed to complete the construction project.

The Court notes that "It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." Spadafore v. Gardner, 330 F.3d 849, 854 (6th Cir. 2003) (internal citation omitted). Plaintiff's allegations against Defendants King, Govern, Maust, Dile, and Baird appear to sound in negligence, not intentional misconduct that "shocks the conscience" of the Court. However, the Court concludes that the substantive due process claim against all Defendants should not be dismissed at this juncture, as Plaintiff's allegations if true, could support a plausible claim. Plaintiff is advised, however, that conclusory allegations of conspiracy or intentional misconduct are insufficient to sustain its claims, absent material facts to support those allegations.

4. Equal Protection.

Plaintiff also alleges that Defendants violated its equal protection rights. The equal protection clause protects against governmental "... intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (citations and internal quotations omitted). Plaintiff does not allege any class-based disparate treatment, and presumably is proceeding as a "class of one" recognized in Olech. To do so, Plaintiff must show that it was treated differently from others in Plaintiff's situation, and that there is no rational basis for the state actor's differential treatment.

Plaintiff's own pleadings strongly suggest a rational basis for ODH's actions, as the statute defines a "reviewable activity" as a failure to conduct the project "in substantial accordance with the approved application...". Ohio Rev. Code §3702.51(S)(5). However, an equal protection challenge can also proceed on allegations that government action was motivated by animus or ill-will toward an individual, as held in Olech. See also, Romer v. Evans, 517 U.S. 620, 634-35 (1996), holding a state constitutional amendment lacked a rational basis because the amendment "... seems inexplicable by anything but animus toward the class it affects ...".

As with Plaintiff's substantive due process claim, Plaintiff's allegations against Defendants may be plausibly read to allege that Defendants arbitrarily departed from their usual standards in revoking Plaintiff's CON.  These actions, according to Plaintiff, were "purposeful, knowing, and reckless" and calculated to harm Plaintiff.  (Compl. ¶91)  These are sufficient to defeat Defendants' Rule 12 challenge at this juncture.

5. <u>Qualified Immunity</u>.

Finally, Defendants seek dismissal of Plaintiff's complaint in its entirety because they are immune from suit.  To determine whether the Defendants are entitled to qualified immunity, the Court must determine whether a constitutional violation occurred; if so, was the constitutional right "clearly established" from the standpoint of a reasonable public official; and if so, was the official conduct objectively unreasonable given the clearly established right in question.  See <u>Williams v. Mehra</u>, 186 F.3d 685, 691 (6th Cir. 1999) (en banc) (internal quotations and citations omitted).

Whether a constitutional right is "clearly established" is a question of law.  "Clearly established" means a rule announced in binding precedent from a controlling court, or a body of persuasive authorities that clearly address the proper resolution of the dispute, leaving "no doubt in the mind of a reasonable officer" that his actions were unconstitutional.  See <u>Gean v.</u>

Hattaway, 330 F.3d 758, 767-768 (6th Cir. 2003). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 639-640 (1987).

The Court assumes, for purposes of this motion, that Plaintiff had a protected property interest in the CON issued by ODH. While property interests in state-issued permits and licenses are likely "clearly established" rights, the Court cannot determine from the pleadings whether Plaintiff's constitutional due process or equal protection rights were violated by the Defendants' alleged conduct. The Court must therefore deny the motion to dismiss based on qualified immunity, without prejudice to renewal at the appropriate juncture in this case.

## CONCLUSION

For all the foregoing reasons, the Court grants Defendant's motion for leave to file an amended answer (Doc. 9), and denies Plaintiff's motion to strike (Doc. 14). Defendants' motion to dismiss (Doc. 11) is granted in part and denied in part. This matter is referred to the Magistrate Judge for a scheduling conference at the convenience of the Court and the parties.

SO ORDERED.

DATED: December 4, 2008    s/Sandra S. Beckwith
                                       Sandra S. Beckwith, Chief Judge
                                       United States District Court